■ MARY S. ELACQUA et al., Appellants, v PHYSICIANS' RECIPROCAL INSURERS, Also Known as PRI, Respondent. [860 NYS2d 229]—

Peters, J.P. Appeal from a judgment of the Supreme Court

(McNamara, J.), entered July 2, 2007 in Albany County, upon a decision of the court in favor of defendant.

The facts leading up to the instant dispute are set forth in this Court's decision upon the parties' prior appeal (21 AD3d 702 [2005], *lv dismissed* 6 NY3d 844 [2006] [hereinafter *Elacqua I*]). Upon that appeal, we held, among other things, that pursuant to *Public Serv. Mut. Ins. Co. v Goldfarb* (53 NY2d 392 [1981]), when the existence of both covered and uncovered claims gives rise to a conflict of interest between an insurer and its insured, the insured is entitled to independent counsel of his or her own choosing at the expense of the insurer and, moreover, the insurer has an affirmative obligation to advise the insured of such right (21 AD3d at 707).

Upon remittal, plaintiffs Mary S. Elacqua and William J. Hennessey (hereinafter collectively referred to as the physicians) and plaintiff OB/GYN Health Center Associates, LLP, the partnership in which the physicians were members (hereinafter the partnership), successfully sought leave to amend their complaint to add causes of action against defendant for, among other things, deceptive business practices pursuant to General Business Law § 349 in failing to inform them that they had a right to select independent counsel of their choosing at defendant's expense in the underlying malpractice action (hereinafter the Hytko action).[1] Subsequently, defendant entered into a settlement with the plaintiffs in the Hytko action for $2.4 million in satisfaction of all claims against plaintiffs in this action.[2] Plaintiffs, however, continued this action on the basis of the amended claims, seeking to recover the counsel fees they had purportedly spent in compelling defendant to indemnify them for the verdict in the Hytko action. Following a bifurcated trial on the issue of liability, Supreme Court dismissed plaintiffs' complaint and entered a judgment thereon. Plaintiffs now appeal.

Plaintiffs' primary contention is that Supreme Court erred in dismissing their General Business Law § 349 claim on the ground that they were unable to demonstrate actual harm as a result of not being represented by independent counsel. General

---

**1.** Plaintiffs' complaint also sought damages for breach of contract based upon defendant's alleged failure to properly defend and indemnify plaintiffs in the Hytko action and seeking a determination that defendant was required to indemnify plaintiffs with respect to the underlying verdict.

**2.** The Hytko action resulted in a jury verdict rendered against the partnership in the amount of $1,899,100 based upon vicarious liability through the negligence of Jane Szary, a nurse practitioner employed by the partnership. By the commencement of the instant action, the amount of the verdict in the Hytko action, with interest, amounted to more than $3 million.

Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," and one injured by such conduct may bring an action to recover damages (General Business Law § 349 [a], [h]). A claim brought under this statute must be predicated on an act or practice which is "consumer-oriented," that is, an act having the potential to affect the public at large, as distinguished from merely a private contractual dispute (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25 [1995]; *see Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 344 [1999]; *Brooks v Key Trust Co. N.A.*, 26 AD3d 628, 630-631 [2006], *lv dismissed* 6 NY3d 891 [2006]). A plaintiff must further demonstrate that such act or practice was " 'deceptive or misleading in a material way and that plaintiff has been injured by reason thereof'" (*Small v Lorillard Tobacco Co.*, 94 NY2d 43, 55 [1999], quoting *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 25; *accord Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d at 344; *see Baron v Pfizer, Inc.*, 42 AD3d 627, 628 [2007]).

The deceptive practice alleged by plaintiffs is that defendant failed to inform them that they had a right to select independent counsel of their choosing at defendant's expense. Supreme Court properly found that the alleged offending practice of defendant was consumer-oriented inasmuch as its failure to inform plaintiffs of their right to select independent counsel was not an isolated incident, but a routine practice that affected many similarly situated insureds. Gregory Mignella, an attorney for defendant, acknowledged that defendant's practice is not to inform its insureds with whom it has conflicts that they have the right to select independent counsel at defendant's expense, and defendant's general counsel, James Tuffin, confirmed that practice.

We further find that this practice was deceptive within the meaning of General Business Law § 349. In *Public Serv. Mut. Ins. Co. v Goldfarb* (53 NY2d at 401), the Court of Appeals reaffirmed the proposition that where an insurer may face liability based upon some of the grounds for recovery asserted but not upon others, the insured defendant is entitled to be represented by an attorney of his or her own choosing at the expense of the insurer (*see Prashker v United States Guar. Co.*, 1 NY2d 584, 593 [1956]). Moreover, as we recently held in *Elacqua I*, where such potential conflict exists between the insurer and the insured, the insurer has an *affirmative obligation* to inform the insured of his or her right to select independent counsel at the

insurer's expense; "[t]o hold otherwise would seriously erode the protection afforded" (21 AD3d at 707).

Here, the partial disclaimer letters sent by defendant to its insureds—including plaintiffs—failed to inform them that they had the right to select independent counsel at defendant's expense, instead misadvising that plaintiffs could retain counsel to protect their uninsured interests "at [their] own expense." Equally disturbing is the fact that defendant continued to send similar letters to its insureds, failing to inform them of their rights, even after this Court's pronouncement in *Elacqua I*.[3] This practice was certainly "likely to mislead a reasonable consumer acting reasonably under the circumstances" (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 26; *see Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d at 344; *Matter of People v Applied Card Sys., Inc.*, 27 AD3d 104, 107 [2005], *lv dismissed* 7 NY3d 741 [2006]) and, therefore, constitutes a deceptive practice pursuant to General Business Law § 349.

Lastly, plaintiffs were required to demonstrate "actual, although not necessarily pecuniary, harm" as a result of defendant's deceptive practice (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 26; *see Small v Lorillard Tobacco Co.*, 94 NY2d at 55-56; *Baron v Pfizer, Inc.*, 42 AD3d at 628). Plaintiffs' argument as to harm is grounded upon the deprivation of their right to independent counsel and the resulting lack of undivided, conflict-free loyalty of Mark Dunn, counsel retained for the partnership by defendant, and Jeffrey Feldman and Terrence O'Connor, the attorneys retained by defendant to represent Hennessey and Elacqua, respectively. "[A]n attorney stands in a fiduciary relationship to the client which relationship is imbued with ultimate trust and confidence that imposes a set of special and unique duties" (*Beltrone v General Schuyler & Co.*, 252 AD2d 640, 641 [1998]; *see Graubard Mollen Dannett & Horowitz v Moskovitz*, 86 NY2d 112, 118 [1995]). Of paramount importance is the duty of counsel to "deal fairly, honestly and with undivided loyalty" to the client, which includes avoiding conflicts of interest and honoring the client's interests over that of the attorney's (*Matter of Cooperman*, 83 NY2d 465, 472 [1994]; *see Beltrone v General Schuyler & Co.*, 252 AD2d at 641; Code of Professional Responsibility DR 1-107 [a] [22 NYCRR 1200.5-c (a)]). This obligation is particularly important in situations where, as here, the interests of an

---

**3.** Indeed, defendant's partial disclaimers to its insureds, as late as August 2006, stated that the insured "may wish to consult an attorney, at its own expense regarding its uninsured interest."

insured are at odds with that of an insurer, in which case tactical decisions must be made by counsel whose loyalty to the insured is unquestioned and whose dedication to the interests of the insured is paramount (see *Feliberty v Damon*, 72 NY2d 112, 120 [1988]; *Nelson Elec. Contr. Corp. v Transcontinental Ins. Co.*, 231 AD2d 207, 209-210 [1997], *lv denied* 91 NY2d 802 [1997]; *Ladner v American Home Assur. Co.*, 201 AD2d 302, 304 [1994]).

This threat of divided loyalty and conflict of interest between the insurer and insured is the precise evil sought to be remedied by *Goldfarb* and our decision in *Elacqua I*, hence the requirement that independent counsel be provided at the expense of the insurer and that the insurer advise the insured of this right. Defendant's failure to inform plaintiffs of this right, together with plaintiffs' showing that undivided and uncompromised conflict-free representation was not provided to them, constitutes harm within the meaning of General Business Law § 349.

The circumstances surrounding the motion to dismiss made by Feldman and O'Connor manifested the conflict of interest presented where "the defense attorney's duty to the insured would require that he defeat liability on any ground and his duty to the insurer would require that he defeat liability only upon grounds which would render the insurer liable" (*Public Serv. Mut. Ins. Co. v Goldfarb*, 53 NY2d at 401 n; *see Prashker v United States Guar. Co.*, 1 NY2d at 593; 21 AD3d at 706-707). Here, Feldman and O'Connor successfully moved to dismiss the complaint in the Hytko action against the physicians, thereby disposing of all covered claims and leaving viable only the uncovered claim against the partnership for vicarious liability based upon the negligence of Jane Szary. The record reveals that the physicians were not fully informed of the ramifications of such motion. Moreover, although the motion to dismiss on behalf of the physicians, if granted, would leave the partnership exposed to uncovered claims, Dunn—who represented the partnership—fully joined in making it, despite the fact that he had legally sufficient grounds to oppose the motion (*see Failla v Nationwide Ins. Co.*, 267 AD2d 860, 862-863 [1999]; *Nelson Elec. Contr. Corp. v Transcontinental Ins. Co.*, 231 AD2d at 209-210; *Ladner v American Home Assur. Co.*, 201 AD2d at 304). Under these circumstances, it simply cannot be said that plaintiffs' interests were adequately represented in the Hytko action. As Supreme Court remarked during the trial, the combined effect of the actions by counsel supplied by defendant was that "the end result was the [defendant's] interests were advanced and the insured doctors' interests were, to put it

mildly, not enhanced." This result, engendered by the lack of independent representation with undivided loyalty uncompromised by conflicts of interest, constituted harm sufficient to sustain a claim under General Business Law § 349.

Plaintiffs' remaining contentions have been rendered academic by our decision.

Spain, Rose, Lahtinen and Kavanagh, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed plaintiffs' cause of action under General Business Law § 349; matter remitted to the Supreme Court for a trial on damages; and, as so modified, affirmed.