■ THEODORE M. HYTKO, Individually and as Administrator of the Estate of KIM A. HYTKO, Deceased, Plaintiff, v WILLIAM J. HENNESSEY et al., Defendants, and OB/GYN HEALTH CENTER ASSOCIATES, Defendant and Third-Party Plaintiff-Respondent-Appellant. JANE E. SZARY, Third-Party Defendant-Appellant-Respondent. [879 NYS2d 595]—

---

Peters, J. Appeals (1) from an order of the Supreme Court (Malone Jr., J.), entered April 13, 2005 in Albany County, which structured the judgment to be entered upon a verdict in favor of plaintiff pursuant to CPLR article 50-A, and (2) from a judgment of said court, entered August 31, 2005 in Albany County, upon, among other things, a verdict rendered in favor of plaintiff.

At the time of the events giving rise to this medical malpractice and wrongful death action, defendants Mary S. Elacqua and William J. Hennessey (hereinafter collectively referred to as the physicians) practiced as members of a partnership, defendant OB/GYN Health Center Associates. Third-party defendant, Jane E. Szary, a nurse practitioner employed by OB/GYN, was the primary caregiver to Kim A. Hytko (hereinafter decedent). Beginning in June 1994 and on several other occasions during the months that followed, decedent presented to defendants with complaints of abdominal pain and was seen and treated by Szary. Decedent was admitted to the hospital in October 1994 and died the following month, the cause of death being listed as "[p]robable choriocarcinoma."[1] Plaintiff, individually and as administrator of decedent's estate, sued Szary, the physicians and OB/GYN[2] alleging, among other things, that Szary was negligent in failing to diagnose decedent's choriocarcinoma and that the physicians failed to properly collaborate with Szary in accordance with certain provisions of the Education Law. Plaintiff subsequently settled with Szary, releasing all claims against her, but reserving his right to proceed against the other defendants. In response, OB/GYN commenced a third-party action against Szary for indemnification.

---

1. Choriocarcinoma is a malignant, aggressive cancer, usually of the placenta.

2. Although physician Jockular Ford was also a named defendant, the action was discontinued against him prior to trial.

A jury trial ensued and, at the close of plaintiff's proof, the physicians moved for a directed verdict in their favor. Supreme Court ultimately granted the motion and the complaint was dismissed against the physicians prior to submission of the case to the jury. At the conclusion of the trial, the jury rendered a verdict finding that Szary was negligent in her care and treatment of decedent and that such negligence was a substantial factor in bringing about her death. The jury awarded damages in favor of plaintiff in the amount of $1.89 million, and Supreme Court awarded OB/GYN judgment as a matter of law on its indemnification claim against Szary. These appeals by OB/GYN and Szary ensued.[3]

Subsequently, Physicians' Reciprocal Insurers (hereinafter PRI) disclaimed coverage for the verdict (*Elacqua v Physicians' Reciprocal Insurers*, 21 AD3d 702, 703 [2005], *lv dismissed* 6 NY3d 844 [2006]). The physicians and OB/GYN thereafter commenced an action against PRI seeking money damages for breach of contract for its failure to properly defend and indemnify them (*id.* at 703-704). PRI then settled plaintiff's claim on behalf of its insureds for $2.4 million (*Elacqua v Physicians' Reciprocal Insurers*, 52 AD3d 886, 887 [2008] [hereinafter *Elacqua II*]), but the physicians and OB/GYN continued their action against PRI, seeking to recoup the counsel fees they expended in their attempt to compel it to indemnify them (*id.*). Ultimately, this Court found that PRI had engaged in deceptive business practices pursuant to General Business Law § 349 (*id.* at 889).

We begin by addressing Szary's assertion that Supreme Court improperly and prematurely dismissed the direct claims against the physicians. A directed verdict pursuant to CPLR 4401 is appropriate when, viewing the evidence in a light most favorable to the nonmoving party and affording such party the benefit of every inference, there is no rational process by which a jury could find in favor of the nonmovant (*see Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]; *Gold v Di Cerbo*, 41 AD3d 1051, 1052-1053 [2007], *lv denied* 9 NY3d 811 [2007]; *Ciocca v Park*, 21 AD3d 671, 672 [2005], *affd* 5 NY3d 835 [2005]). In a medical malpractice action, establishment of a prima facie case requires

---

**3.** Counsel for OB/GYN has informed this Court that OB/GYN's appeals have been rendered moot by subsequent events. Accordingly, and inasmuch as OB/GYN now only seeks affirmance of Supreme Court's judgment, its appeals are deemed abandoned (*see Czynski v State of New York*, 53 AD3d 881, 882 n [2008], *lv denied* 11 NY3d 715 [2009]). Since OB/GYN is the only party that appealed from the order entered April 13, 2005, the appeal from that order is dismissed. In addition, by order entered September 14, 2007, this Court granted plaintiff's motion to withdraw and discontinue his appeals.

expert testimony that there was a deviation from accepted standards of medical care and that such deviation was the proximate cause of the injury (*see Turcsik v Guthrie Clinic, Ltd.*, 12 AD3d 883, 886 [2004]; *Postlethwaite v United Health Servs. Hosps.*, 5 AD3d 892, 895 [2004]; *Giambona v Stein*, 265 AD2d 775, 776 [1999]).

As previously noted, the essence of plaintiff's case against the physicians was that they failed to adequately "collaborate" with Szary concerning decedent's care, within the meaning of Education Law § 6902 (3) (a). Upon the physicians' motion for a directed verdict, plaintiff conceded that there was no expert testimony that the physicians deviated from any accepted standard of care or that any such deviation was a substantial factor in causing the death of decedent. In fact, Richard Waldman, a physician specializing in obstetrics and gynecology, testified that the degree of collaboration with Szary was in keeping with good and accepted standards of practice. Contrary to Szary's assertion that the directed verdict was granted before she had the opportunity to offer any proof, the record reveals that Supreme Court appropriately reserved on the motion and, before finally granting it, twice gave Szary the opportunity to submit evidence against the two physicians, which she failed to do. As the evidence presented was insufficient to establish a prima facie case against the physicians, Supreme Court appropriately granted them a directed verdict.

Szary next contends that, because her treatment of decedent was in furtherance of her employer's business, she cannot be held independently liable for negligent acts committed within that scope. Under well-settled principles of respondeat superior, it is fundamental that in order for an employer to be held vicariously liable for the torts of an employee, a viable cause of action must lie against that employee for his or her individual negligence (*see Karaduman v Newsday, Inc.*, 51 NY2d 531, 545-546 [1980]; *Sanderson v Bellevue Maternity Hosp.*, 259 AD2d 888, 891-892 [1999]; *see also Lopez v Master*, 58 AD3d 425 [2009]; *Magriz v St. Barnabas Hosp.*, 43 AD3d 331, 332-333 [2007], *lv denied* 10 NY3d 790 [2008]). Thus, where the employee commits negligence, a cause of action lies against both the employee and the employer, and the employer has the right to seek indemnification (*see McDermott v City of New York*, 50 NY2d 211, 218 n 4 [1980]; *Ditingo v Dreyfuss*, 27 AD3d 1024, 1026-1027 [2006]; *see also Macari v Parsons Hosp.*, 26 AD2d 584, 584 [1966]). Here, plaintiff brought an action against both OB/GYN and Szary, among others. Although plaintiff subsequently settled with Szary, he specifically reserved his right to

maintain his action against OB/GYN and the other defendants on the theories of both active negligence and respondeat superior. As the jury verdict established that the only active negligence was on the part of Szary, liability on the part of OB/GYN was solely vicarious. As such, Supreme Court did not err in awarding judgment as a matter of law in favor of OB/GYN on its indemnification claim against Szary (*see Ditingo v Dreyfuss*, 27 AD3d at 1026-1027).[4]

Nevertheless, we agree with Szary's contention that OB/GYN's insurer, PRI, should be barred from invoking the equitable remedy of common-law indemnification due to its unclean hands. Although not raised in Supreme Court, this argument flows directly from our decision in *Elacqua II* and, therefore, was previously unavailable to Szary. Moreover, as this issue concerns public policy implications regarding an insurer's obligations and the consequences of failing to live up to those obligations (*see Elacqua v Physicians' Reciprocal Insurers*, 52 AD3d 886 [2008], *supra*; *Elacqua v Physicians' Reciprocal Insurers*, 21 AD3d 702 [2005], *supra*), we are compelled to address the argument (*see Matter of Niagara Wheatfield Adm'rs Assn. [Niagara Wheatfield Cent. School Dist.]*, 44 NY2d 68, 72 [1978]; *Pesta v City of Johnstown*, 53 AD3d 884, 886-887 [2008]; *Matter of Heslin v City of Cohoes*, 74 AD2d 393, 396 [1980], *revd on other grounds* 53 NY2d 903 [1981]).

PRI seeks indemnification against Szary on behalf of OB/GYN through subrogation. Both subrogation (*see Dominion Ins. Co., Ltd. v State of New York*, 305 AD2d 779, 781 [2003]; *Loctite VSI v Chemfab N.Y.*, 268 AD2d 869, 871 [2000]) and implied indemnification (*see Mas v Two Bridges Assoc.*, 75 NY2d 680, 690 [1990]; *McDermott v City of New York*, 50 NY2d at 216-217; *State of New York v Posillico, Inc.*, 277 AD2d 753, 754 [2000]) are equitable causes of action. The purpose of these equitable remedies is to shift a debt or obligation to a party who more properly should be accountable in order to prevent unjust enrichment and an unfair result (*see State of New York v Stewart's Ice Cream Co.*, 64 NY2d 83, 88 [1984]; *State of New York v Posillico, Inc.*, 277 AD2d at 754; *Phillips v Young Men's Christian Assn.*, 215 AD2d 825, 827 [1995]). However, equitable remedies are barred by the doctrine of unclean hands where the

---

**4.** There is no merit to Szary's additional argument that the complaint must be dismissed because there was no finding of liability directly against OB/GYN, as OB/GYN's liability was solely premised upon its vicarious liability for Szary's negligence (*see McDermott v City of New York*, 50 NY2d at 218 n 4; *Ditingo v Dreyfuss*, 27 AD3d at 1026-1027; *see also Nobel v Ambrosio*, 120 AD2d 715, 717 [1986]).

party seeking to assert them "has committed some unconscionable act that is 'directly related to the subject matter in litigation' and has injured the party attempting to invoke the doctrine" (*PenneCom B.V. v Merrill Lynch & Co., Inc.*, 372 F3d 488, 493 [2d Cir 2004], quoting *Weiss v Mayflower Doughnut Corp.*, 1 NY2d 310, 316 [1956]; *see Hickland v Hickland*, 100 AD2d 643, 645 [1984], *appeal dismissed* 63 NY2d 951 [1984]; *see also Sardanis v Sumitomo Corp.*, 282 AD2d 322, 324 [2001]). Additionally, public policy precludes indemnification for those who commit intentional torts or active negligence (*see Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 281 AD2d 107, 111 [2001], *mod* 98 NY2d 435 [2002]; *State of New York v Posillico, Inc.*, 277 AD2d at 755). Thus, the equitable powers of the courts should not be exerted on behalf of one who has acted fraudulently or has gained an advantage by deceit (*see PenneCom B.V. v Merrill Lynch & Co., Inc.*, 372 F3d at 493; *Sardanis v Sumitomo Corp.*, 282 AD2d at 324).

As the insurer of the physicians and OB/GYN, PRI had an affirmative obligation, once it determined that its interests were adverse to those of its insureds in this action, to inform them of their right to select counsel of their own choosing at PRI's expense (*see Elacqua v Physicians' Reciprocal Insurers*, 52 AD3d at 888-889). As described in our decision in *Elacqua II*, PRI failed in this regard, the practical impact being that its interests were advanced at the expense of its insureds (*id.* at 889-891). The impact of this failure was most evident when counsel for the physicians successfully moved to dismiss the direct claims against them, leaving only uncovered claims against OB/GYN through vicarious liability for the negligence of Szary (*id.* at 890). Additionally, counsel provided by PRI for OB/GYN joined in the making of the motion, despite having legally sufficient evidence to oppose it, exposing his own client to an uncovered multimillion dollar judgment (*id.*). Because of the failure of PRI to advise its clients of their rights, and the attendant negative impact it had on the clients' interests, this Court found that PRI was guilty of deceptive business practices pursuant to General Business Law § 349 (*id.* at 888-889).

In addition to prejudicing its clients, PRI's conduct likewise caused injury to Szary. The deceptive business practices by PRI allowed the directed verdict to be rendered in favor of the physicians, which deprived Szary of the possibility that a jury would have rendered a verdict finding the physicians at least partly negligent for decedent's injuries. Significantly, had the jury found *any* negligence on behalf of either of the physicians, this would have converted OB/GYN's third-party claim against Szary

from one for indemnification to contribution (*see Mas v Two Bridges Assoc.*, 75 NY2d at 689-690; *McDermott v City of New York*, 50 NY2d at 216; *Johnson City Cent. School Dist. v Fidelity & Deposit Co. of Md.*, 272 AD2d 818, 822 [2000]), rendering Szary immune from liability by virtue of her settlement (*see* General Obligations Law § 15-108; *McDermott v City of New York*, 50 NY2d at 220; *Johnson City Cent. School Dist. v Fidelity & Deposit Co. of Md.*, 272 AD2d at 819; *State of New York v U.W. Marx, Inc.*, 209 AD2d 784, 784 n 1 [1994]; *see also Williams v New York City Health & Hosps. Corp.*, 262 AD2d 231, 232 [1999]). Thus, in light of the deceptive business practices in which PRI engaged and the adverse effects that flowed from such conduct, equity demands that PRI be barred from recovery against Szary under the equitable remedy of implied indemnification due to its unclean hands (*see Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 281 AD2d at 111; *Hickland v Hickland*, 100 AD2d at 645).

Szary's remaining contentions are either unpreserved or have been rendered academic by our decision.

Cardona, P.J., Lahtinen, Kane and McCarthy, JJ., concur. Ordered that the appeal from the order entered April 13, 2005 is dismissed, without costs. Ordered that the judgment entered August 31, 2005 is modified, on the law, without costs, by reversing so much thereof as granted defendant OB/GYN Health Center Associates judgment on its third-party complaint seeking indemnification against third-party defendant, Jane E. Szary; third-party complaint dismissed; and, as so modified, affirmed.