Peters, EJ.
Appeals (1) from an order of the Supreme Court (Meddaugh, J.), entered September 16, 2013 in Sullivan County, which granted a motion by defendants Akbar F. Ahmed and Crystal Run, LLP for a directed verdict, and (2) from the judgment entered thereon.
In April 2006, plaintiff Andrew Peluso (hereinafter plaintiff), who suffered from diverticulitis, underwent colon resection surgery performed by defendant Akbar F. Ahmed, a general surgeon employed by defendant Crystal Run, LLP at a facility operated by defendant Orange Regional Medical Center (hereinafter ORMC). After plaintiff developed an incisional hernia, Ahmed performed a surgical repair on July 17, 2006, by affixing a Kugel mesh patch to the abdominal wall, in a procedure known as an open repair of an incisional ventral hernia. Plaintiff developed a recurrent hernia at the incision site and, in April 2007, required further surgery to remove the patch and repair the recurring hernia, which was performed by another surgeon. Plaintiff and his wife, derivatively, thereafter commenced this *1028 action in 2008 alleging, as against Ahmed and Crystal Run (hereinafter collectively referred to as defendants), as relevant here, medical malpractice related to the July 2006 surgery.[1]
At trial, plaintiffs testified and called as witnesses Ahmed and a general surgeon, David Befeler, who had examined plaintiff and reviewed his medical records. Defendants also called Ahmed as a witness, along with their own expert, Paul Reichman, a general surgeon who had reviewed plaintiffs medical records. At the close of proof, Supreme Court reserved decision on defendants’ motion for a directed verdict, and the case went to the jury. After the jury deadlocked, the court declared a mistrial and, in a written decision and order, granted defendants’ motion for a directed verdict, finding that plaintiffs had failed to present competent, nonspeculative evidence that Ahmed committed medical malpractice when he repaired plaintiff’s incisional hernia. The court thereafter issued a judgment dismissing the complaint as against defendants. Plaintiffs now appeal from both the order and the judgment.
Supreme Court properly granted defendants’ motion for a directed verdict based upon plaintiffs’ failure to establish a prima facie case of medical malpractice. “A directed verdict pursuant to CPLR 4401 is appropriate when, viewing the evidence in a light most favorable to the nonmoving part[ies] and affording such part[ies] the benefit of every inference, there is no rational process by which a jury could find in favor of the nonmovant[s]” (Hytko v Hennessey, 62 AD3d 1081, 1083 [2009] [citations omitted]; see Szczerbiak v Pilot, 90 NY2d 553, 556 [1997]; Dumas v Adirondack Med. Ctr., 89 AD3d 1184, 1185 [2011], lv denied 18 NY3d 807 [2012]; Siegel, NY Prac § 408 at 715 [5th ed 2014]). To establish a prima facie case of medical malpractice, plaintiffs were required to submit “expert testimony that there was a deviation from accepted standards of medical care and that such deviation was the proximate cause of the injury” (Hytko v Hennessey, 62 AD3d at 1084; see James v Wormuth, 21 NY3d 540, 545 [2013]; Dentes v Mauser, 91 AD3d 1143, 1144 [2012], lv denied 19 NY3d 811 [2012]; Caruso v Northeast Emergency Med. Assoc., P.C., 85 AD3d 1502, 1504 [2011]). “Allegations of malpractice that are based upon speculation or unsupported by competent evidence are insufficient to establish a prima facie case” (Dentes v Mauser, 91 AD3d at 1144 [internal quotation marks and citation omitted]; see DeLorenzo v St. Clare’s Hosp. of Schenectady, N.Y., 69 AD3d 1177, 1179 [2010]).
*1029 Plaintiffs’ medical malpractice claim, as narrowed at trial, was that Ahmed failed to properly secure the patch to plaintiffs abdominal wall during the surgery to repair his incisional hernia, causing plaintiff further injuries, including scars, adhesions and recurring hernias requiring additional surgeries. At trial, the testimony of the three medical witnesses regarding the accepted procedures for this surgery was consistent in all material respects. The disputed factual issue was whether Ahmed followed or deviated from those procedures and whether the subsequent recurrence of the incisional hernia and adhesions was attributable to the deviation. Ahmed testified that, after plaintiff developed an incisional hernia following the colon resection surgery, he performed open, rather than laporoscopic, surgery to repair the hernia by cutting through the incision site and removing defective tissue and adhesions. Both Befeler and Reichman agreed that this open procedure was appropriate. To protect the incision and keep the internal organs inside the abdomen and allow the incision to heal, Ahmed described how he affixed a two-sided Kugel mesh patch to the abdominal wall by tacking quadrant sutures in four places. By design, one side of the patch was smooth and nonadherent and faced the intestines and internal organs, while the other side was mesh and rough and designed to adhere to and promote growth to the inner abdominal wall, which was expected to grow and attach to the mesh patch. Both Befeler and Reichman agreed that this was the correct patch to use for this repair and that it was designed to be affixed in this manner. The surgeons all agreed that the patch should be affixed using two rows of tacks about one centimeter apart along the edge, and that the patch must be checked after the tacks are inserted to be sure that there are no gaps allowing abdominal organs to protrude, which Ahmed testified he accomplished. Ahmed recounted that he made sure that there was an overlay of three to five centimeters between the outer edge of the mesh and defects in the incision, consistent with Befeler’s opinion testimony.
Befeler opined that Ahmed deviated from accepted medical practice through his “improper placement of the Kugel patch on and in the abdominal wall,” based upon the fact that the surgery “allowed the small bowel, large bowel and the bladder to slip through a defect in the abdominal wall.” However, Befeler never specified which aspect of the placement was improper nor offered support for his conclusion that it was secured “in a negligent manner so that it permitted abdominal contents to . . . latch on to the Marlex [rough] side of the mesh,” causing further herniation and adhesions. While Befeler focused on the fact that Ahmed’s operative report did not record that two rows *1030 of tacks were used or that the required amount of patch overlay was provided, he did not assert that accepted medical practice required that these details be recorded or point to any evidence that the proper practice was not followed. Reichman pointed out that neither the surgeon who removed the Kugel patch and inserted a different type of patch, nor any of plaintiffs subsequent surgeons, noted the amount of overlay in their operative reports. Further, while Befeler opined that the amount of time that it took Ahmed to complete the surgery, 50 minutes, was “awfully fast,” he never stated that it represented a deviation from accepted medical practice. Reichman opined that it was “perfectly acceptable,” and that Ahmed did not engage in any malpractice.
As Supreme Court concluded, the essence of plaintiffs’ claim is that, because the patch failed to hold the abdominal contents and keep them from protruding through the incision and plaintiff developed adhesions, Ahmed must have deviated from the accepted standard of care. However, Befeler himself conceded that, “even under the best of circumstances,” a “recurrent hernia can occur,” that is, “a patient who has a hernia repair surgery can have recurrent hernia[s] without malpractice”; he also admitted that patients can develop adhesions or scars without malpractice, as that is the body’s normal “inflammatory response” to invasive abdominal surgery. Reich-man echoed that opinion. While Befeler testified that a hernia repair would not fail if performed with “perfect technique,” he did not specify any deficiency in Ahmed’s technique nor opine that perfect technique was the applicable standard of care. These concessions by Befeler entirely undermined his unsupported conclusion that Ahmed committed malpractice.
Further, while Befeler relied upon the operative report of the nontestifying surgeon who removed the patch in 2007, that report did not state that the patch had been improperly placed or secured, nor was it critical of Ahmed’s surgery.[2] In any event, “[a] doctor is not liable in negligence merely because a treatment, which the doctor as a matter of professional judgment elected to pursue, proves ineffective” (Dumas v Adirondack Med. Ctr., 89 AD3d at 1186 [internal quotation marks and citations omitted]). Other than Befeler’s speculative supposition about what caused the recurring hernia and adhesions and his unsupported conclusions, which were inadequate to meet plaintiffs’ burden of making a prima facie case of medical mal *1031 practice (see Dentes v Mauser, 91 AD3d at 1144), plaintiffs submitted no competent medical evidence that Ahmed deviated from the accepted standard of care (see Hytko v Hennessey, 62 AD3d at 1084). Thus, even viewing the evidence in a light most favorable to plaintiffs, there was no rational process by which a jury could find in their favor (see id. at 1083). Accordingly, Supreme Court correctly granted defendants’ motion for a directed verdict (see CPLR 4401).
Rose, Egan Jr. and Lynch, JJ., concur.
Ordered that the order and judgment are affirmed, with costs.

. Plaintiffs’ lack of informed consent cause of action was reportedly disposed of in a prior order, and the loss of consortium cause of action was withdrawn during the jury trial.

. The report noted “severe adherence” of the bowel to the mesh patch, slippage of the bowel and bladder through the recurrent hernial defect and multiple adhesions.